UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MERVIS INDUSTRIES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | 1:09-cv-0633-SEB-JMS |
| vs. ) | |
| ) | |
| PPG INDUSTRIES, INC., ) | |
| ) | |
| Defendant. ) | |

**ORDER ADDRESSING MOTIONS TO DISMISS**

This cause is before the Court on competing motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6): on July 13, 2009, Defendant PPG Industries, Inc. ("PPG") filed a Motion to Dismiss [Docket No. 18], seeking dismissal of Counts I, III, and IV of the Complaint; and on August 6, 2008, Plaintiff Mervis Industries, Inc. ("Mervis") filed a Motion to Dismiss [Docket No. 27], seeking dismissal of Counts I and II of the Counterclaim. For the reasons detailed in this entry, we GRANT PPG's Motion to Dismiss and DENY Mervis's Motion to Dismiss.

*Factual Background*

Mervis alleges that, as long ago as 1895, PPG began glassmaking operations at its facility in Kokomo, Indiana ("Kokomo Facility"), which it used "as its own personal toxic dump." Compl. ¶¶ 7, 8. PPG ceased its glassmaking operations in 1931, though it

continues to operate in portions of the Kokomo Facility even today.  Compl. ¶ 7.  Located within the Kokomo Facility are two properties that were later acquired by Mervis: the first located at 990 East Carter Street in Kokomo, Indiana ("Carter Street Facility"), and the second located at 631 South Ohio Street in Kokomo, Indiana ("Ohio Street Facility) (collectively "Properties").  Compl. ¶¶ 6, 7.  The Properties are bisected by Wildcat Creek.  Compl. ¶ 11.  While Mervis no longer owns the Properties, it continues to have "certain contractual obligations" relating to the management of contamination of the Properties.  Compl. ¶ 16.

According to Mervis, PPG disposed of the waste materials from its manufacturing process on the Properties and landfilled waste construction materials at the Kokomo Facility.  Compl. ¶ 8.  Because PPG used arsenic trioxide during the refining phase of its operations to remove gas bubbles from the glass, the waste material generated by PPG and disposed of at the Kokomo Facility was contaminated with arsenic and arsenic trioxide.  Id.  Mervis alleges that the waste material has "contaminated and continues to contaminate the soil, the groundwater[,] and the surface water in and near the Properties," and is leaching into Wildcat Creek.  Compl. ¶¶ 9, 11.

PPG is currently undertaking some arsenic remediation efforts at a portion of its Kokomo Facility, pursuant to the Indiana Voluntary Remediation Program ("VRP"), which Mervis states addresses only a fraction of the contamination.  Compl. ¶ 12.  Mervis further alleges that PPG is utilizing wells owned by the Indiana-American Water Company ("IAWC") that draw contaminated groundwater from the Properties, which is

further causing the arsenic and arsenic trioxide to migrate. Compl. ¶¶ 12, 13. The IAWC withdraws water from these wells for use as drinking water through sales to the public. Compl. ¶ 13.

Mervis brought this action against PPG on April 21, 2009, alleging open dumping of solid waste in violation of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6945(a), 6972(a)(1)(A) (Count I); disposal of solid waste in a manner presenting an imminent and substantial endangerment to health or the environment, 42 U.S.C. § 6972(a)(1)(B), (Count II); discharge of a pollutant from a point source into navigable waters without a National Pollutant Discharge Elimination System (NPDES) permit in violation of the Clean Water Act ("CWA"), 33 U.S.C. § 1311(a), (Count III); and private nuisance (Count IV); and seeking to recover response costs pursuant to Indiana's Environmental Legal Actions statute, Ind. Code § 13-30-9, et seq. (Count VI and VII) and § 107(a) of the Comprehensive Environmental Response, Compensation and Recovery Act ("CERCLA"), 42 U.S.C. § 9607(a), (Count VIII).

On July 13, 2009, PPG asserted three Counterclaims against Mervis: the first seeking to recover response costs pursuant to CERCLA § 107(a), 42 U.S.C. § 9607(a); the second seeking contribution pursuant to CERCLA § 113(f)(1), 42 U.S.C. § 9613(f)(1); and the third seeking to recover response costs pursuant to Indiana's Environmental Legal Actions statute, Ind. Code § 13-30-9, et seq. In its Counterclaim, PPG alleges that hazardous substances other than arsenic have been released on the Properties. Countercl. ¶ 27. Between 1991 and 2007, Mervis operated an auto shredding

and salvaging operation and scrap metal yard at the Carter Street Facility that PPG believes caused the Carter Street Facility to become contaminated with lead, zinc, trichloroethylene ("TCE"), vinyl chloride ("VC"), benzene, and other hazardous substances.  Answer ¶ 6.  In addition, Mervis operated a warehouse, steel fabrication operation, and/or an electronic equipment exchange operation from 1991 to 2007 that PPG believes caused the Ohio Street Facility to become contaminated with TCE, lead, benzopyrene, and VC.  Id.  According to PPG, these activities have contributed to the contamination of the Properties.  Id.  PPG states that it has undertaken response actions and incurred response costs relating to the removal of the hazardous waste on the Properties, and that these costs are consistent with the National Contingency Plan.  Countercl. ¶¶ 23-26.

      PPG has moved to dismiss Mervis's open dumping claim, CWA claim, and private nuisance claim.  Mervis has moved to dismiss PPG's CERCLA claims.

*Legal Analysis*

**I. Standard of Review**

      "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to withstand the requirements of Federal

Rules of Civil Procedure 8 and 12(b)(6).  Id.  A party moving to dismiss nonetheless bears a weighty burden. "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 550 U.S. 544, 563 (2007) (citing Sanjuan v. American Bd. of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994) ("[At the pleading stage] the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint.")).  In addressing a Rule 12(b)(6) motion, we treat all well-pleaded factual allegations as true, and we construe all inferences that reasonably may be drawn from those facts in the light most favorable to the non-movant.  Lee v. City of Chicago, 330 F.3d 456, 459 (7th Cir. 2003); Szumny v. Am. Gen. Fin., 246 F.3d 1065, 1067 (7th Cir. 2001).

**II.  PPG's Motion to Dismiss**

PPG contends that Counts I, III, and IV of the Complaint must be dismissed, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief may be granted.  Specifically, PPG argues that (1) Mervis has failed to state a legally cognizable claim for open dumping under the RCRA because the Complaint refers only to conduct that occurred prior to the enactment of the RCRA; (2) Mervis has failed to allege an ongoing or continuous addition of a pollutant from a point source into a navigable water for purposes of the CWA; and (3) Mervis lacks standing to pursue a private nuisance claim because it no longer owns the Properties.

*A. Open Dumping*

The RCRA prohibits "any solid waste management practice or disposal of solid waste or hazardous waste which constitutes the open dumping of solid waste or hazardous waste . . . ." 42 U.S.C. § 6945(a). An "open dump" is defined in the Act as "any facility or site where solid waste is disposed of which is not a sanitary landfill . . . and which is not a facility for disposal of hazardous waste." 42 U.S.C. § 6903(14). The Act defines "disposal" as the "discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be . . . discharged into any waters, including ground waters." 42 U.S.C. § 6903(3). Section 6945(a) explicitly states that the prohibition is enforceable against "persons engaged in the act of dumping" pursuant to § 6972, which authorizes citizens suits against any person "who is alleged to be in violation of any permit, standard, regulation, condition, requirement, or order which has become effective pursuant to [the RCRA]." 42 U.S.C. § 6972(a)(1)(a). Thus, in order to survive a motion to dismiss, a plaintiff must allege that the defendant "was at the time of filing 'engaged in the act of open dumping.'" S. Rd. Assoc's. v. Int'l Bus. Mach's. Corp., 216 F.3d 251, 255 (2d. Cir. 2000).

PPG argues that the open dumping claim must be dismissed because it only alleges conduct that occurred prior to the enactment of the RCRA. We agree. By its terms, the statute is effective only upon promulgation of criteria under § 6907(a)(3). Jones v. Inmont Corp., 584 F. Supp. 1425, 1433 (S.D. Ohio 1984). Therefore, the RCRA's

6

prohibition on open dumping is prospective only and may not be applied to conduct that occurred prior to the Act's effective date.  Id.  Because Mervis does not allege that any solid waste was disposed on the Properties after 1974, it fails to state a claim for open dumping.

Mervis argues that it has alleged an ongoing violation of the RCRA because the waste remains on the Properties unremediated and continues to leach, migrate, and be drawn into the soil, groundwater, and Wildcat Creek.  However, the mere presence of pollutants is not sufficient to allege an ongoing violation of the open dumping prohibition.  See S. Rd. Assoc's., 216 F.3d at 257.  What is prohibited by the Act and accompanying regulations is "the act of introducing a substance that causes M.C.L. exceedances, not the action of the M.C.L. exceedances on the environment."  Id. at 256 (holding that plaintiff's allegation that continued presence of pollutants in the groundwater resulting from prior disposal of hazardous waste did not constitute open dumping).  Therefore, to sustain an action for open dumping, Mervis must allege that PPG is introducing substances that would cause exceedances.  Id. at 256-57; see also June v. Town of Westfield, 370 F.3d 255, 259 (2d. Cir. 2004) (holding that plaintiff's allegation that fill material remained in shore embankment was not sufficient to state a claim for open dumping since plaintiff did not allege that defendant "'continued to introduce substances that made the . . . exceedances worse'").  The fact that pollutants remain on the Properties unremediated is not sufficient to allege an ongoing violation of the open dumping prohibition, nor is the fact that PPG, through its VRP, is causing contaminated groundwater to move through the

7

Properties. See S. Rd. Assoc's., 216 F.3d at 257 ("[T]he movement of soil (with or without contaminants) from here to there pursuant to a state-sponsored or state-authorized plan or program does not constitute 'introduction' for the purposes of RCRA."). Therefore, we GRANT PPG's Motion to Dismiss Count I.

*B. CWA*

The CWA prohibits the "discharge of any pollutant by any person" without an NPDES permit. 33 U.S.C. § 1311(a). "Discharge of a pollutant," in turn, is defined as the "addition of any pollutant to navigable waters from any point source," 33 U.S.C. § 1362(12). The Act defines "point source" as "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged." 33 U.S.C. § 1362(14). Lastly, "navigable waters" is defined as "waters of the United States." 33 U.S.C. § 1362(7). Moreover, the CWA does not permit suits based on wholly past conduct. Gwaltney of Smithfield, Ltd. V. Chesapeake Bay Found., Inc., 484 U.S. 49, 64 (1987). Rather, to succeed under the CWA, plaintiffs must prove a continuous or intermittent violation of the CWA. Id.

PPG argues that Mervis fails to state a claim because it does not identify a point source from which pollutants are discharged. PPG also contends that Mervis has only alleged a discharge into groundwater, which it argues does not constitute navigable

8

waters under the CWA. In addition, PPG argues that Mervis has failed to allege a continuous or intermittent violation of the CWA.

"The structure of the CWA's definition of 'point source' (a 'discernible, confined, and discrete conveyance . . . from which pollutants are or may be discharged') connotes the terminal end of an artificial system for moving water, waste, and other materials." Froebel v. Meyer, 217 F.3d 928, 937 (7th Cir. 2000) (citing United States v. Plaza Health Laboratories, 3 F.3d 643, 646 (2d Cir. 1993) (noting that the definition "evoke[s] images of physical structure and instrumentalities that systematically act as a means of conveying pollutants from an industrial source to navigable waterways")). A point source refers to the "proximate source from which the pollutant is directly introduced to the destination water body." Catskill Mountains Chapter of Trout Unlimited, Inc. v. City of New York, 273 F.3d 481, 493 (2d. Cir. 2001). Mervis has alleged that PPG landfilled construction materials on the Properties and that the contamination is now leaching and migrating into Wildcat Creek. However, Mervis has failed to identify any "defined, discrete conveyance" on the Properties by which pollutants are discharged into Wildcat Creek, nor has it alleged any facts from which we may infer that pollutants are being discharged via a "defined, discrete conveyance" into Wildcat Creek. A general statement that contaminants are now migrating or leaching into Wildcat Creek is not sufficient to state a claim under the CWA.

Because we find that Mervis has failed to allege that pollutants were discharged from a point source, we need not decide whether Mervis has alleged a discharge into

9

navigable waters or whether it has alleged a continuous or intermittent violation of the CWA.  Therefore, we GRANT PPG's motion to dismiss Count III of the Complaint.

*C. Nuisance*

In its briefing on this issue, Mervis abandoned its private nuisance claim in Count IV of the Complaint.  Because Mervis concedes that this claim should be dismissed, we GRANT PPG's motion to dismiss Count IV of the Complaint.

**III.  Mervis's Motion to Dismiss**

Mervis moves to dismiss Counts I and II of the Counterclaim, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief may be granted.  Mervis argues that PPG's § 107(a) claim is deficient because Mervis did not own the Properties at the time the hazardous materials were disposed, and that any release of hazardous materials on the Properties during Mervis's ownership resulted from the waste disposed of on the Properties by PPG.  Mervis further argues that PPG is a potentially responsible party ("PRP") under CERCLA, and as such, is barred from pursuing a § 107(a) against other PRPs. With regard to Counterclaim II, Mervis argues that PPG's claim is barred by Cooper Industries, Inc. v. Aviall Services, Inc., 543 U.S. 157 (2004), because PPG has not and cannot allege that it has been sued under CERCLA § 106 or § 107(a).

*A. Section 107(a)*

Section 107(a) of CERCLA provides a private right of action to recover certain voluntary clean-up costs associated with hazardous waste removal.

> To establish a case for reimbursement of clean-up costs under section 107(a), a plaintiff must establish four elements: (1) the property is a facility; (2) there has been a release or threatened release of a hazardous substance; (3) the release has caused the plaintiff to incur necessary costs of response that are consistent with the National Contingency Plan; and (4) the defendant is in one of four categories of potentially responsible parties.

Evansville Greenway & Remediation Trust v. S. Ind. Gas & Elec. Co., 661 F. Supp. 2d 989, 994 (S.D. Ind. 2009) (citing Kerr-McGee Chem. Corp. v. Lefton Iron & Metal Co., 14 F.3d 321, 325 (7th Cir. 1994); City of Martinsville v. Masterwear Corp., 2006 WL 2710628 at *2 (S.D. Ind. Sept. 20, 2006). Included among the categories of PRPs is "any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous wastes were disposed of . . . ." 42 U.S.C. § 9607(a)(2).

Mervis first argues that PPG may not pursue a § 107(a) claim because Mervis did not own the Properties at the time PPG disposed of the arsenic and arsenic trioxide, and that any response costs that PPG has incurred relate solely to its own disposal of arsenic and arsenic trioxide on the Properties. Mervis further argues that PPG has not, in fact, undertaken to voluntarily clean up the Properties.

Mervis's argument appears to be based on the assumption that the only hazardous waste disposed of on the Properties was the arsenic and arsenic trioxide disposed of by PPG. This, however, is in dispute. PPG has alleged that hazardous substances other than

arsenic have been released at the Properties. Countercl. ¶ 27. Specifically, PPG alleges that Mervis's operations at the Carter Street Facility caused the property to become contaminated with lead, zinc, trichloroethylene ("TCE"), vinyl chloride ("VC"), benzene, and other hazardous substances, and that its operations at the Ohio Street Facility have caused the property to become contaminated with TCE, lead, benzopyrene, and VC. Answer ¶ 6. Moreover, PPG states that it has undertaken response actions relating to the removal of the hazardous waste on the Properties. Countercl. ¶¶ 24-25. These facts, taken as true, are sufficient to state a claim under § 107(a). The fact that Mervis disputes these facts is not relevant at this stage in the proceedings.

Mervis further argues that PPG may not pursue a § 107(a) claim against Mervis because PPG is itself a PRP under § 107(a). However, in United States v. Atlantic Research Corp., 551 U.S. 128, 131 (2007), the Supreme Court explicitly held that a PRP may seek to recover its costs from other PRPs under § 107(a). Therefore, PPG's status as a PRP does not prevent it from pursuing a claim under § 107(a). For these reasons, we DENY Mervis's Motion to Dismiss Counterclaim I.

*B. Section 113*

"CERCLA section 113(f)(1) complements section 107(a) by permitting private parties to seek contribution from joint tortfeasors during or following a civil action under § 106 or § 107(a)." Evansville, 661 F. Supp. 2d at 995. A PRP who has incurred voluntary clean-up costs, as opposed to clean-up costs resulting from a § 106 or §107(a)

suit, may not seek contribution from another PRP under § 113(f).  Cooper, 543 U.S. at 160-61; see also Evansville, 661 F. Supp. 2d at 995-96.  Rather, that party may only recover its costs pursuant to §107(a).  Atlantic Research, 551 U.S. at 138-39.

Mervis contends that PPG may not seek contribution from Mervis pursuant to § 113(f) because PPG has not been sued under § 106 or § 107(a).  Mervis is correct that PPG may not recover the clean-up costs associated with the VRP under § 113(f) because those costs were voluntarily incurred.  However, Mervis has sued PPG pursuant to §107(a).  Compl. ¶¶ 61-68.  Thus, to the extent that PPG is found liable to Mervis under § 107(a), PPG may seek contribution pursuant to 113(f) to ensure that costs are equitably distributed.  See Atlantic Research, 551 U.S. at 140 (noting that if a PRP sought to impose joint and several liability against another PRP under § 107(a), that "a defendant PRP in such a § 107(a) suit could blunt any inequitable distribution of costs by filing a § 113(f) counterclaim"). Therefore, we DENY Mervis's Motion to Dismiss Counterclaim II.

## *Conclusion*

For the foregoing reasons, we GRANT PPG's Motion to Dismiss Counts I, III, and IV, and DENY Mervis's Motion to Dismiss Counterclaims I and II.

IT IS SO ORDERED.

Date:___03/30/2010_____

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

S. Andrew Bowman
BINGHAM MCHALE, LLP
abowman@binghammchale.com

Daniel M. Darragh
COHEN & GRIGSBY P.C.
ddarragh@cohenlaw.com

Jerry A. Davis
DAVIS & DELANOIS, P.C.
davis@davis-delanois.com

David L. Hatchett
HATCHETT & HAUCK LLP
david.hatchett@h2lawyers.com

Thomas Andrew Herr
BARRETT & MCNAGNY LLP
tah@barrettlaw.com

Walter D. James III
WALTER D. JAMES III, PLLC
walter.james@jamespllc.com

Offer  Korin
KATZ & KORIN P.C.
okorin@katzkorin.com

John F. McCauley
BINGHAM MCHALE LLP
jmccauley@binghammchale.com

Gregory A. Neibarger
BINGHAM MCHALE LLP
gneibarger@binghammchale.com

Michael Jonathan Reeder
HATCHETT & HAUCK LLP
mike.reeder@h2lawyers.com

David Randall Steiner
BARRETT & MCNAGNY LLP
drs@barrettlaw.com